## In Re Wheeler.

[No 10,807.   Filed April 2, 1920.]

MASTER AND SERVANT. — *Workmen's Compensation.* — *Average Weekly Wages.—Time Lost.—Construction of Statute.—Sundays.—*Whether Sundays upon which no work is done constitute days "lost" within the meaning of §76 of the Workmen's Compensation Act (as amended, Acts 1919 p. 158), depends on whether the employe's engagement requires work on Sundays; and where he has not engaged to, and does not, work on intervening Sundays, such failure to work cannot be counted as lost time in ascertaining his average weekly wages.

From the Industrial Board of Indiana.

Certified Questions of Law.

Proceedings under the Workmen's Compensation Act by Henry Wheeler against the American Brass Foundry Company.   Questions certified by the Industrial Board. *Answered.*

BATMAN, J.—The Industrial Board has certified the following statement of facts to this court:

"On May 16, 1919, one Henry Wheeler entered the employment of the American Brass Foundry Company and continued in said employment continuously thereafter until and including the 11th day of December, 1919; that from May 16th, 1919, to December the 11th, 1919, both inclusive, there are 210 days; that 180 of these days were week days and the said Henry Wheeler worked upon each one of them; that within said period there were thirty Sundays and the said Henry Wheeler did not work upon any one of these Sundays; that during the entire period he was employed in the same grade of work and received as wages for his work the sum of $617.143; that on the evening of December 11th, just a few minutes before quitting time, the said Henry Wheeler received a personal injury by an accident arising out of and in the course of his employment, resulting in the loss of his right hand by separation at the wrist joint. It is conceded that the said Henry Wheeler is entitled to compensation for two hundred weeks for the loss of his right hand. A dispute has arisen between the employer and the injured as to his average weekly wage. The employe contends that the thirty Sundays, or 4 2/7 weeks upon which he did not work, should be treated as time lost and that the total period worked would therefore be 25 5/7 weeks and the average weekly wage should be $24.00. Upon the other hand the employer contends that these Sundays intervening regularly between Saturdays and Mondays upon which Mr. Wheeler worked, are not to be treated as days lost and the total time worked by him is thirty weeks and his average weekly wage would therefore be $20.571 * * *." Upon the foregoing facts the Industrial Board, by virtue of §61 of the Workmen's Compensation Act of this state (Acts 1915 p. 392, §80201 et seq.

Burns' Supp. 1918, as amended, Acts 1917 p. 154), has submitted the following questions of law for our determination:

"(1) Would a finding that the average weekly wages of Henry Wheeler were $24.00 be according to law? (2) Would a finding that the average weekly wages of Henry Wheeler were only $20.571 be according to law? (3) Under the provisions of clause (c) of amended Section 76 (Acts 1919 page 175) are Sundays regularly intervening between Saturdays and Mondays upon which an employe works, to be regarded as days lost unless the employe actually works on such Sundays?"

Section 29 of the Workmen's Compensation Act, as amended in 1917, provides: "Where the injury causes total disability for work, there shall be paid to the injured employe during such total disability, but not including the first seven (7) days thereof, a weekly compensation equal to fifty-five per cent. (55%) of his average weekly wages for a period not to exceed five hundred (500) weeks." Acts 1917 p. 227, §8020m1 Burns' Supp. 1918. Section 76 of said act, as amended in 1919, provides as follows: "(c) 'Average weekly wages' shall mean the earnings of the injured employe in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of injury, divided by fifty-two; but if the injured employe lost seven or more calendar days during such period, although not in the same week, then the earnings for the remainder of such fifty-two weeks shall be divided by the number of weeks, and parts thereof, remaining after the time so lost has been deducted. Where the employment prior to the injury extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employe earned wages shall be followed provided

results just and fair to both parties will thereby be obtained." (Acts 1919 pp. 158, 175.)

It is apparent from a reading of that part of §76, quoted above, that the provision with reference to "lost days" has reference to time lost from the days he was engaged to work under his contract of employment. That is to say, if an employe is engaged in a service that requires him to work seven days in a week, such as a fireman or engineer at a plant furnishing light or water to a community, or a watchman at the plant of some industry, and he loses seven or more days during his period of work, whether Sundays or week days, then such days so lost should enter into a determination of his "average weekly wages" as therein provided. But where an employe has not engaged to work on Sundays and he does not so work, it cannot be said with reason that when he had failed to work on a Sunday that he has lost a day within the meaning of said section. The evident purpose of the legislature in making the provision quoted above from §76 was to give the parties concerned a fair and just rule for the determination of the "average weekly wages" referred to in said §29, and as far as possible to guard against differences arising in that regard. If we should give that part of said §76 under consideration the construction for which the employe is said to contend, it would lead to results evidently not intended by the legislature. To illustrate: If a man should be employed to work during week days only, at a weekly wage of $20, and should work every week day during the fifty-two weeks immediately preceding an injury, resulting in total disability for work, it is apparent that his average weekly wage during such period was in truth and in fact $20. This would be manifestly so without calculation. But if we should give the provision of §76, quoted above, the construction for which the employe is said to contend, we would be

required to deduct from the fifty-two weeks the number of weeks represented by the intervening Sundays, and divide the total wages received by him during said fifty-two weeks by such reduced number, which would show an average weekly wage in excess of $23. We cannot presume that the legislature, in endeavoring to formulate a fair and just rule, intended that the provision of the section under consideration should be given a meaning that would bring about such a result.

We therefore answer the first question propounded by the Industrial Board in the negative, and the second question in the affirmative. Our answer to the third question so propounded is made manifest by our discussion of the first and second.